**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MINNESOTA**
**FOURTH DIVISION**

| | |
|---|---|
| Kerry Larson, | Civil File No. _____ |
| Plaintiff, | |
| v. | **COMPLAINT FOR DAMAGES FOR VIOLATIONS OF THE FAIR DEBT COLLECTION PRACTICES ACT** |
| FMS Investment Corp. and Resurgent Capital Services L.P., | |
| Defendants. | **JURY TRIAL DEMANDED** |

Kerry Larson (plaintiff or "Larson") brings this complaint pursuant to the Fair Debt Collection Practices Act 15 U.S.C. § 1692, *et seq*. (the "FDCPA" or the "Act") against the defendants, FMS Investment Corp. and Resurgent Capital Services L.P., because the defendants violated the FDCPA, and states:

**JURISDICTION AND VENUE**

1.     The jurisdiction of this Court arises under 28 U.S.C. § 1331 and 15 U.S.C. § 1692k(d).

2.     Venue is proper in this District because the acts and transactions occurred here, the plaintiff resides here and the defendants transact business here.

**PARTIES**

3.     The plaintiff, Larson is a resident of the city of Coon Rapids, county of Anoka and state of Minnesota, and is a "consumer" as that term is defined by 15 U.S.C. § 1692a(3).

4.     The defendant, FMS Investment Corp., is a Maryland company that assumed the name FMS Services ("FMS"). FMS is a collection agency with an office in Schaumburg, Illinois

that does business in Minnesota.  The defendant FMS is a "debt collector" as that term is defined by 15 U.S.C. § 1692a(6).

5.      The defendant, Resurgent Capital Services L.P. ("Resurgent"), is a Delaware corporation that has an office in Greenville, South Carolina that does business in Minnesota.  The defendant, Resurgent, is a "debt collector" as that term is defined by 15 U.S.C. § 1692a(6).

6.      Upon information and belief, the defendant, Resurgent was the employer, master, principal or joint venturer of FMS, and the defendant Resurgent is vicariously liable for the acts or omissions of the defendant, FMS.

## FACTUAL ALLEGATIONS

7.      Sometime prior to July 2009, the plaintiff incurred a "consumer debt," as that term is defined by 15 U.S.C. §1692a(5), in the alleged amount of $698.21 with Credit One Bank which had issued a credit card to the plaintiff.

8.      The account was transferred, assigned or sold to defendant Resurgent for collection sometime prior to July 2009.

9.      The account was transferred, assigned or sold by Resurgent to defendant FMS for collection sometime prior to July 2009.

10.     Larson works as an independent contractor for a delivery/messenger company and the plaintiff earns a living by making deliveries driving his car during the day.

11.     In or about July 2009, Larson began receiving collection calls to his cell phone during the day from FMS regarding the debt while he was working.

12.     In or about the end of July 2009, Larson received a collection call while he was working from an FMS collector who said her name was "Amy".

13.     Larson disputed the amount of the debt at the beginning of the telephone call with collector, Amy of FMS.

14.     During the July 2009 collection call between Amy of FMS and Larson, the debt was settled, whereby Larson would pay $300.00 in full payment and satisfaction of the alleged amount due.

15.     Amy put her supervisor on the phone call with Larson and confirmed that the $300 settlement was payment in full for the debt and that funds would be taken from Larson's checking account on or about July 31, 2009.

16.     Amy told the plaintiff during the July telephone call that they needed Larson's checking account and routing numbers to "hold the deal" or settlement.  Larson did not have his checking account information when this settlement was made. Larson was in his car working when he took the July 2009 call from FMS on his cell phone and he didn't know his Wells Fargo checking account or routing numbers.

17.     Larson told collector Amy that he had his check card or debit card which was associated with his checking account.

18.     Amy's supervisor told Larson he would have to give FMS his check card number to "hold the deal" until Larson arrived home later that evening, at which time he had to call FMS and give it the routing and account numbers for his checking account which FMS would then use to pay the $300.00 settlement.

19.     Pursuant to the directions of Amy and FMS, the plaintiff gave his check card or debit card number associated with his Wells Fargo checking account to collector Amy.

20.     Larson said to Amy and the supervisor, "You are not going to use that check card. Right?  You're going to get rid of that check card number; you're going to rip it up; destroy it, if I

call you tonight with my checking account information." The defendants confirmed that they would destroy the plaintiff's check card number if he called FMS after he arrived home from work and gave them his account and routing numbers for his checking account.

21.     That evening, the plaintiff called FMS approximately 1.5 hours after the settlement telephone conversation when he returned from work. The plaintiff spoke with Amy of FMS.  The plaintiff gave Amy and FMS the routing and account numbers for his Wells Fargo Bank checking account, associated with the check card number the plaintiff had given the defendant, FMS, earlier in the day.  Larson again confirmed with Amy of FMS that she would destroy his check card number and she said "Right away Mr. Larson.  No problem."

22.     The plaintiff confirmed with Amy and her supervisor of FMS at least two or three times that they would destroy the check card number associated with the plaintiff's Wells Fargo checking account after he called FMS that evening with his checking account information.

23.     On August 3, 2009, Resurgent deducted or took $300.00 from Larson's checking account using his check or debit card information.

24.     On August 3, 2009, FMS deducted or took $300.00 from Larson's checking account, using the information the plaintiff had given FMS in the evening when he arrived home from work in or about late July 2009.

25.     Contrary to the defendants' promises, they did not destroy the plaintiff's check card number, but instead they used it to withdraw $300.00 from the plaintiff's checking account.

26.     The defendants breached the oral settlement agreement regarding the debt by taking $600 from the plaintiff's Wells Fargo account instead of $300.

27.     On Thursday, August 6, 2009, the plaintiff called Wells Fargo Bank and disputed one of the $300 charges made to his account by the defendants.

28.     The following Tuesday or Wednesday, August 11 and 12, 2009, the plaintiff noticed that Wells Fargo charged his account for six or seven overdraft charges of $35 each, or a total of $245.

29.     The plaintiff did not earn any income on August 11, 12 and 13, 2009 because he did not have money to buy fuel for his job because of the defendants' conduct.

30.     After August 3, 2009, the plaintiff spoke to an Erica Jackson of FMS who said that "We'll (FMS) take care of the overdraft charges right away and credit your account."  Ms. Jackson said "That should have never happened."

31.     After the $600 was withdrawn from the plaintiff's account, the plaintiff spoke to a Jim Pernell of FMS several times.  During one of these telephone conversations, Larson disputed the $300 charge as illegal and unauthorized, and demanded an immediate credit.  Mr. Pernell of FMS said that "It will take three business days for your funds to be credited to your account" despite the plaintiff's protests and insistence that the funds be immediately credited to his account.

32.     When the overdraft charges and the $300.00 were not credited to the plaintiff's account, Larson spoke again to Mr. Pernell of FMS, who put the plaintiff on hold for a long period of time.  After being placed on hold for a long period of time, the call was terminated by Mr. Pernell or FMS, without an FMS employee coming back on the call to speak to the plaintiff.

33.     The plaintiff spoke to additional employees of FMS before the $300.00 overpayment was re-credited to his account.

34.     The overdraft charges were eventually credited back to the plaintiff's account because of the plaintiff's telephone calls to Wells Fargo.

35.     On August 12, 2009, $300.00 was credited to the plaintiff's account by FMS.

36.     On August 13, 2009, $300.00 was credited to the plaintiff's account by Resurgent.

37.     After $600 was credited back to the plaintiff's account instead of $300 collector Pernell started calling Larson.  Collector Pernell of FMS, called the plaintiff "an idiot," "an ass," and "stupid" during one of their telephone conversations.

38.     Other collectors then proceeded to call the plaintiff after they had credited his account for $600.

39.     Section 1692e of the Act prohibits a debt collector from using any false, deceptive, or misleading representation or means in connection with the collection of a debt.

40.     The defendants violated § 1692e by:

    a.  Taking $300.00 out of the plaintiff's Wells Fargo account by using his check card number, when the defendant repeatedly promised they wouldn't do so when asked for these assurances by the plaintiff.

    b.  Violating the settlement contract between the parties by taking $600.00 out of the plaintiff's account, instead of $300.00.

41.     Section 1692d of the Act generally prohibits   debt collectors from engaging in any conduct the natural consequence of which is to harass, oppress, or abuse any person in connection with the collection of a debt.  Section 1692d(2) of the FDCPA specifically prohibits a debt collector from using obscene or profane language or any language the natural consequence of which is to abuse the hearer or reader.

42.     The defendants violated § 1692d or § 1692d(2) of the FDCPA:

    a.   When collector Pernell called the plaintiff "an idiot," "an ass," and "stupid."

    b.  By passing the financially distressed plaintiff from FMS employee to FMS employee after the defendants deducted $600.00 from the plaintiff's account

without solving the problem as soon as possible by crediting his Wells Fargo account by $300.00.

    c.  By toying or playing with the plaintiff when he repeatedly called FMS to get the $300.00 returned to his account. For instance, collector Pernell placed the plaintiff's telephone call on hold for a long period of time and then terminated the call or hung up on the plaintiff.

    d.  By delaying the repayment of $300.00 to the plaintiff's account after the defendants illegally took too much from the plaintiff's Wells Fargo account.

43.    The defendants' conduct caused the plaintiff actual damages as defined by the Act in the form of emotional distress, fear, humiliation, anger, and anxiety from being harassed by the defendants and the plaintiff is also entitled to statutory damages under the FDCPA.

## TRIAL BY JURY

44.    The plaintiff is entitled to and hereby demands a trial by jury.  US Const. Amend. VII. Fed. R. Civ. Pro. 38.

## CAUSES OF ACTION

### COUNT I
### VIOLATIONS OF THE FAIR DEBT COLLECTION PRACTICES ACT
### 15 U.S.C. § 1692 et seq.

45.    The plaintiff incorporates by reference all of the above paragraphs of this complaint as though fully stated herein.

46.     The foregoing acts and omissions of the defendants constitute numerous and multiple violations of the FDCPA, including but not limited to each and every one of the above-cited provisions of the FDCPA, 15 U.S.C. § 1692 et seq.

47.     As a result of the defendants' violations of the FDCPA, the plaintiff is entitled to actual damages pursuant to 15 U.S.C. § 1692k(a)(1); statutory damages pursuant to 15 U.S.C. § 1692k(a)(2)(A); and reasonable attorneys' fees and costs pursuant to 15 U.S.C. § 1692k(a)(3).

## PRAYER FOR RELIEF

**WHEREFORE**, the plaintiff respectfully prays that a judgment be entered in his favor and against the defendants for:

a.     An award of actual damages, pursuant to 15 U.S.C. § 1692k(a)(1);

b.     An award of statutory damages pursuant to 15 U.S.C. § 1692k(a)(2)(A);

c.     An award of costs and reasonable attorneys' fees, pursuant to 15 U.S.C. § 1692k(a)(3); and

d.     Such other and further relief as may be just and proper.

Respectfully submitted,

Dated:  January 8, 2010                    By:    /s/ Michael G. Phillips
                                           Michael G. Phillips
                                           **PHILLIPS LAW, PLLC**
                                           MN Attorney I.D. No. 0290105
                                           412 South Fourth Street, Suite 1155
                                           Minneapolis, MN 55415
                                           Telephone: (612) 677-8345
                                           Facsimile: (612) 344-1579
                                           **mike@phillipslawmn.com**

                                           **CONSUMER JUSTICE CENTER, P.A.**
                                           Thomas J. Lyons, Jr.
                                           MN Attorney I.D.  No. 0249646

Trista M. Roy
MN Attorney I.D. No. 0387737
367 Commerce Court
Vadnais Heights, MN 55127
Telephone:  (651) 770-9707
Facsimile:  (651) 704-0907
tommycjc@aol.com

**ATTORNEYS FOR PLAINTIFF**